(Reap. Dec. 9683)

FORD MOTOR COMPANY v. UNITED STATES

Entry No. 967835.

(Decided April 27, 1960)

*John A. Moekle* and *James E. O'Boyle* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: This cause of action invokes the jurisdiction of the court by an appeal for a reappraisement, filed pursuant to the provisions of section 501 of the Tariff Act of 1930 (19 U.S.C. § 1501).

The subject merchandise which was exported by Henry Ford & Son, Ltd., of Cork, Ireland, and imported by Ford Motor Company of Dearborn, Mich., consists of automobiles identified as 25 Standard Anglia, 62 Anglia De Luxe, and 50 Prefect.

At the trial, the case was submitted upon a stipulation setting forth certain relevant facts agreed to by adversary counsel, together with the testimony of three witnesses called by the plaintiff.

As the salient facts of the case are not in dispute, the issue presented resolves itself into a question of law.

Adversary parties have agreed that neither foreign, export, nor United States value, as defined in the statute, applies to the subject merchandise, and that the proper statutory basis for appraising said merchandise is cost of production, as defined in section 402(f) of the Tariff Act of 1930 (19 U.S.C. § 1402(f)).

Item 7 of the stipulation (exhibit 1) reads—

That the component parts of the automobiles in question were manufactured or purchased for distribution by Ford Motor Company Limited of Dagenham, England; that such component parts were shipped by Ford Motor Company Limited from Dagenham, England in a knocked down state to Henry Ford & Son Limited at Cork, Ireland and assembled into automobiles by the latter company in Cork; that the said component parts were sold by Ford Motor Company Limited of Dagenham, England to Henry Ford & Son Limited of Cork, Ireland, and that the latter company thereafter sold and shipped the automobiles assembled therefrom directly to Ford Motor Company of Dearborn, Michigan, in the United States.

Upon importation of the automobiles, the United States appraiser, in determining the cost of production, included as a part of the cost of material and labor the amount of Irish import duty of £48, £50, and £53, respectively, for the Standard Anglia, Anglia De Luxe, and the Prefect. As will be noted later, said Irish import duty was never imposed upon the component parts of the automobiles in question.

It was agreed that if the Irish import duty were properly a part of the statutory cost of production, said cost for each automobile would be as follows:

| | Standard Anglia | Anglia de luxe | Prefect |
|---|---|---|---|
| Material and Labor | £323. 86 | £332. 28 | £348. 38 |
| Usual general expenses | 32. 39 | 33. 23 | 34. 84 |
| Profit | 28. 50 | 29. 24 | 30. 66 |
| Total | £384. 75 | £394. 75 | £413. 88 |

It was further agreed that if said Irish import duties were not properly a part of the statutory cost of production, then the cost of production for each automobile would be, as claimed by the importer, as follows:

| | Standard Anglia | Anglia de luxe | Prefect |
|---|---|---|---|
| Material and Labor | £275. 86 | £282. 28 | £295. 38 |
| Usual general expenses | 27. 59 | 28. 23 | 29. 54 |
| Profit | 24. 27 | 24. 84 | 25. 99 |
| Total | £327. 72 | £335. 35 | £350. 91 |

Attached to the stipulation (exhibit 1) is a copy of section 38 of the Irish Finance Act of 1932, as to which the parties have agreed that it was applicable to the importation into Ireland of the component parts that later were assembled into automobiles, covered by entry No. 967835, which embraces the instant importation.

Said section 38 is in the following terms:

Whenever the Revenue Commissioners are satisfied that any article or goods chargeable with a duty of customs are imported for the purpose of undergoing in Saorstat Eireann a process of manufacture and being subsequently exported or for the purpose of being incorporated in Saorstat Eireann with other articles or goods as a part or ingredient of a manufactured product which is intended to be exported, the Revenue Commissioners may, subject to compliance with such conditions as they may think fit to impose, permit such article or goods (as the case may be) to be imported without payment of duty.

Since it is not disputed that no Irish import duties were assessed, paid, or collected with respect to the component parts which entered into the fabrication of the automobiles in controversy; nor did any import duties accrue or become owing by virtue of said section 38, the sole question presented is whether the appraiser legally included the amount of an Irish import duty which might have been applicable had automobile parts been imported into Ireland to enter into the fabrication of automobiles for consumption in Ireland.

The stipulation above referred to was augmented and strengthened by the testimony of the three witnesses called by plaintiff as follows:

Timothy M. Courtney, employed by Henry Ford & Son, Ltd., Cork, Ireland, had been head of the customs department of that company, whose duty it was to clear through Irish customs all importations for the Ford Company. He described in detail the measures

taken by his company in order to comply with the conditions imposed by the Irish Government; how parts for automobiles intended for exportation to the United States were separately crated in England for shipment and brought into Ireland in strict compliance with section 38 of the Irish Finance Act, *supra*, carefully stored, finally assembled into automobiles, and ultimately shipped to the United States; and that at no time did the parts in controversy enter into the commerce of Ireland.

Later in this opinion, reference will be made to the contention of the Government that the automobiles in question are "similar" to other automobiles which were subject to the Irish import duties.

Courtney testified in great detail to the many differences between the construction and use of the automobiles exported to the United States and those sold for Irish domestic consumption; that the exported automobiles were made to meet the North American Standard Specifications (NASS) that the NASS cars had left-hand drive; whereas those sold for Irish domestic consumption had right-hand drive. This, of course, necessitated a different instrument panel, changes in the dash panel and speedometer shaft, the floor pedals, such as the clutch, brake pedal, and accelerator, the seat track and hand brake and their connecting linkages, and also various changes necessitated in converting from right to left-hand drive. Furthermore, NASS cars were equipped with laminated glass windshields to meet United States safety standards, whereas Irish domestic cars used a toughened glass which would not be acceptable in the United States. Then, too, sealed beam lights are required but are not used in Ireland. Numerous other differences were pointed out by Courtney, but the foregoing are sufficient to establish a dissimilarity between the cars used in Ireland and those in the United States.

Plaintiff's witness, C. F. Levy, regional finance manager of plaintiff's affiliated European manufacturing companies, pointed out other distinguishing features between the cars for Irish consumption and NASS cars.

Michael Mullins described himself as an assistant principal officer in the Customs and Excise Secretariat of the Office of the Revenue Commissioners of the Irish Government. From his testimony, it was clearly established that the component parts of the NASS automobiles were exempt from the payment of Irish import duties, by virtue of section 38 of the Irish Finance Act, *supra*; that careful accounts were kept to insure that parts imported by Ford of Ireland were distinctly separated from the parts intended for domestic use; and, furthermore, that the finished assembled automobiles must be exported from Ireland within 3 months of the date of importation of the parts, unless further time were granted by the Commissioners.

Although it is established that no Irish import duties were imposed or collected on the materials which entered into the construction of the automobiles in controversy, the Government contends that, because said Irish import duties would be imposed on such materials exported from England and imported into Ireland for assembly into automobiles for Irish home consumption, the automobiles sold for export to the United States are "similar" to those sold for home consumption within the meaning of the statute (19 U.S.C. § 1402(f)).

The court is not impressed with this contention and finds no sound reason for applying it in this case. It is well settled that, as a general rule, "commercial interchangeability" is one of the essential features in the proof of similarity of merchandise. Our appellate court, in *United States* v. *Henry Maier*, 21 C.C.P.A. (Customs) 41, T.D. 46378, gave what this court deems to be a fair statement of the rule as follows—

It is apparent, therefore, that for different manufactures * * * to be "such or similar" within the meaning of paragraph 2 of said section 402(e), it is not enough that they be of the same general character, but they must be made of approximately the same materials, commercially interchangeable, and adapted to the same uses and so used * * *.

The testimony of plaintiff's witnesses Courtney and Levy demonstrates beyond question that the NASS cars are totally dissimilar to the cars made from the same materials fabricated in Ireland for home consumption and clearly fails to meet the tests of similarity as defined in the *Maier* case, *supra*.

Consequently, the contention expressed in the Government's brief that "The Automobiles Sold for Export to the United States Are Similar to Those Sold for Home Consumption in Ireland Under the Involved Statute" is regarded by the court as without substance.

A case cited by plaintiff, which has a direct bearing here, is *Wecker & Co.* v. *United States*, 47 Treas. Dec. 825, T.D. 40989. There, certain felts which had been made specially for export to the United States were the subject of appraisement proceedings. It seems that when said felts in the unfinished form were received in Germany for manufacture into finished products for sale in Germany, they were subject to the imposition of a German tax, but if said merchandise thus manufactured was to be exported, no German tax was imposed. There, as here, the Government contended that the German tax should be included as part of the cost of materials in computing the cost of production of the felts. However, the court noted the various distinguishing characteristics between the felts made for export and those intended for domestic German consumption and rejected the contention of the Government.

Other authorities cited by adversary counsel in their briefs have

been considered, but it is deemed unnecessary to review them, in view of the conclusion reached herein.

Upon the record and for the foregoing reasons, the court makes the following findings of fact—

1. The merchandise in issue consists of 25 Standard Anglia, 62 Anglia De Luxe, and 50 Prefect automobiles, which had been assembled by Henry Ford & Son, Ltd., Cork, Ireland, and sold to plaintiff.

2. The parts for the automobiles so assembled in Ireland had been imported from England, and, upon importation, no Irish import duties were paid or became due and owing.

3. The instant automobiles were made to specifications that apply only to automobiles sold to the United States market. The imported automobiles did not enter into commerce or trade of Ireland and were in many important respects different from the automobiles assembled for domestic use in Ireland.

4. There was no market value or price for the imported merchandise at the time of exportation of such merchandise to the United States, at which such or similar merchandise was freely offered for sale for home consumption or for export to the United States, to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade. Nor was there any United States value for such merchandise at which such or similar merchandise was freely offered for sale for domestic consumption, in the principal markets of the United States, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade.

5. The cost of producing the automobiles, as prescribed by section 402(f) of the Tariff Act of 1930, excluding the Irish import duties, which were not assessed or paid, is as follows—

| | Standard Anglia | Anglia de luxe | Prefect |
|---|---|---|---|
| Material and Labor | £275. 86 | £282. 28 | £295. 38 |
| Usual general expenses | 27. 59 | 28. 32 | 29. 54 |
| Profit | 24. 27 | 24. 84 | 25. 99 |
| Total, each | £327. 72 | £335. 35 | £350. 91 |

As conclusions of law, the court holds—

1. There is no foreign, export, or United States value for the automobiles in controversy, as such value is defined in section 402 (c), (d), or (e) of the Tariff Act of 1930 (19 U.S.C. § 1402 (c), (d), or (e)), as amended by the Customs Administrative Act of 1938.

2. That cost of production, pursuant to section 402(f) of said tariff act, is the proper basis of value for the instant merchandise.

3. Said value is as shown in finding of fact number 5, *supra*.

Judgment will issue accordingly.